UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIYA SANGER, et al.,<br>   Plaintiffs,<br>  v.<br>AHE AHN, et al.,<br>   Defendants. | Case No. 18-cv-07204-JCS<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**<br>Re: Dkt. No. 4 |

## I. INTRODUCTION

Plaintiffs Priya Sanger and Michael Sanger brought this action against Defendants Ahe Ahn and Lance Ahn in state court under California's Uniform Voidable Transactions Act ("UVTA") seeking to void a deed of trust on behalf of Ahe Ahn encumbering non-party Leah Ahn's interest in a tenancy-in-common shared with the Sangers. Defendants removed to this Court. Defendants have recorded a notice of default as to the deed of trust, and the Sangers now move for a preliminary injunction barring Defendants for recording a notice of sale or conducting a foreclosure sale based on the deed of trust. The Court held a hearing on January 11, 2019, at which counsel for Defendants did not appear. For the reasons discussed below, the motion is GRANTED, an injunction is issued, and the Sangers shall provide a bond in the amount of $10,000.[1]

## II. BACKGROUND

### A. Evidentiary Record

The Sangers are co-owners of real property located at 847–851 Lombard Street in San Francisco, which is held as a tenancy-in-common with Alisa Baker (who is not involved in the

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

present action) and Leah Ahn and subject to a tenancy-in-common agreement (the "TICA"). Sanger Decl. (dkt. 6) ¶¶ 3–5 & Ex. A (TICA). A joint mortgage was in place before Leah Ahn purchased her interest in the property in 2004. *Id.* ¶¶ 3–4. Leah Ahn's mother Ahe Ahn[2] states that she loaned Leah Ahn at least $400,000 to purchase her interest and the Sangers were aware of that loan by 2005, Ahe Ahn Decl. (dkt. 14-3) ¶ 3–4, and there is some evidence that Priya Sanger was aware of that loan by 2007, Leah Ahn Decl. (dkt. 14-2) Ex. A.[3]

The record includes two promissory notes purportedly executed by Leah Ahn on August 14, 2009, both requiring repayment of $600,000 to her mother Ahe Ahn with zero percent interest and stating that the loan was secured by a separate "Deed to Secure Debt statement of even date herewith pledging the real property located at 851 Lombard Street . . . as security." Utrecht Decl. (dkt. 7) Ex. E. One promissory note has a due date of "September 2014" and the other has a due date of "September 1, 2013. *Id.* The text of the notes are otherwise identical, but Leah Ahn's signatures, the notary stamps, and the notary's signatures are similar but not precisely identical between the two documents (indicating that those elements of the documents are not photocopied), and the witness signatures are markedly different. *Id.* June Choi is listed as the notary for both notes. *Id.* Ahe Ahn states in her declaration that she loaned Leah Ahn "at least $400,000 for the purchase of 851 Lombard" in 2004 (and that the Sangers were aware of that loan no later than 2005), and that she loaned "at least $200,000 in additional sums in connection with a planned refinance" in 2009, which the Sangers knew of by the middle of that year, for a total loan of $600,000. Ahe Ahn Decl. ¶¶ 3–4. Ahe Ahn states that she took out a mortgage on her home to

---

[2] Ahe Ahn is an immigration attorney whose practice caters to the local Korean community in the area of Georgia where she lives. Ahe Ahn Decl. ¶ 1. According to her son Lance Ahn, she also does some family law work. Utrecht Decl. (dkt. 7) Ex. C at 73:7–21. Ahe Ahn immigrated to the United States from South Korea at the age of 42 and English is her second language. Ahe Ahn Decl. ¶ 1.

[3] This exhibit is a single page of a transcript of Priya Sanger's June 27, 2017 deposition. Priya Sanger testified that she saw a document in 2007 that included the statement "Leah got 400,000 from her parents and cash to pay the seller's interest in full and assume the loan [presumably referring to the joint mortgage] in his place." It is not clear from Defendants' short excerpt what document this testimony references or whether the quoted statement is attributable to Priya Sanger or some other person. A more complete excerpt filed by the Sangers with their reply includes Priya Sanger's testimony that she "found out [about the financing from Ahe Ahn] sometime after [Leah Ahn] entered the TIC." Sanger Reply Decl. (dkt. 18) ¶ 4 & Ex. A at 160:6–7.

1  make the 2009 loan. *Id.* ¶ 4.

2  The Sangers admit that they learned in 2009 of the loan Ahe Ahn provided that year for refinancing. Artiga-Purcell Opp'n Decl. (dkt. 14-1) Ex. A (Priya Sanger's responses to requests for admission) at 2; *see also id.* Ex. B (materially identical responses by Michael Sanger). In a reply declaration, Priya Sanger clarifies that her statements that she was aware of the loans reflect what Leah Ahn told her, which she initially believed but no longer believes to be true. Sanger Reply Decl. (dkt. 18) ¶¶ 5–6. Priya Sanger has not seen documentation showing that Ahe Ahn provided funds to Leah Ahn, and the Sangers' attorney states that Ahe Ahn did not produce any such documents in response to a May 2018 request for production. *Id.* ¶¶ 5–6; Utrecht Reply Decl. ¶¶ 3–4 & Ex. A. Priya Sanger also states that the refinancing of the property in 2009, although planned, never actually took place. Sanger Reply Decl. ¶ 6.

In 2010, at the age of seventy-two,[4] Ahe Ahn appointed her son Lance Ahn as power of attorney because her "health declined precipitously" as a result of the disputes regarding the property at issue in this case and she did not trust herself. Utrecht Decl. Ex. B at 58:1–14; Ahe Ahn Decl. ¶ 2 & Ex. A. "As [her] Power of Attorney, Lance [Ahn] is tasked with handling [the present] action on [her] behalf." Ahe Ahn Decl. ¶ 2.

Leah Ahn ceased making payments on the building's joint mortgage in 2011, and the Sangers made payments on her behalf to avoid foreclosure of the building. Sanger Decl. ¶ 6. The Sangers prevailed in arbitration against Leah Ahn pursuant to the TICA, and a California court confirmed a $72,870.07 judgment in their favor on March 13, 2012. Sanger Decl. ¶ 8; RJN (dkt. 8) Ex. B. The judgment also required Leah Ahn to "perform all of the acts required by the Corrected Final Award." RJN Ex. B. According to Priya Sanger, "Leah Ahn refused to pay any amount towards the judgment,[5] and continues to refuse to pay her share of the joint mortgage to this day." Sanger Decl. ¶ 9. The Sangers have been attempting to enforce their judgment against

---

[4] There is some tension between the statement in Ahe Ahn's declaration that she was seventy-two years old at the time she granted power of attorney in April of 2010 and the statement in Defendants' opposition brief that Ahe Ahn is "in her 70s" as of December of 2018. *See* Opp'n at 17. It is possible that Ahe Ahn's declaration is intended to mean that she was seventy-two at the time she prepared the declaration in 2018.

[5] As discussed below, a significant partial payment was made against the judgment in 2015.

3

Leah Ahn for more than six years. *Id.* The judgment has been amended several times in the intervening year to reflect increasing amounts owed by Leah Ahn, with an April 16, 2018 amended judgment reflecting a total of $340,072 owed. RJN Ex. S.

A contractor, Ted Elms, filed a petition in December of 2012 to confirm an arbitration award of $14,100 against Leah Ahn. RJN Ex. D. The California Superior Court confirmed the award on June 24, 2013. RJN Ex. E.

Leah Ahn recorded a deed of trust on March 18, 2013 that she executed on March 15, 2013[6] securing Leah Ahn's repayment of a $600,000 promissory note in favor of Ahe Ahn by placing in trust property at 851 Lombard Street. RJN Ex. F (Deed of Trust); Ahe Ahn Decl. Ex. B (same). The deed of trust refers on its face to a September 1, 2009[7] promissory note and states that Leah Ahn "has promised to pay this debt in regular Periodic Payments . . . and to pay the debt in full not later than September 1st, 2014." RJN Ex. F. Ahe Ahn states that she obtained the deed of trust because she "had recently learned that one of Leah's co-tenants in common had encumbered her unit with a deed of trust" and therefore wished "to safeguard my [i.e., Ahe Ahn's] $600,000.00 loan to Leah for my personal benefit," not based on intent to defraud. Ahe Ahn Decl. ¶¶ 5, 7. The Sangers admit that another deed of trust was recorded against cotenant Alisa Baker's interest in the property for the benefit of her father, before the Ahns recorded their deed of trust, and also without authorization. Artiga-Purcell Opp'n Decl. Ex. A at 3.

At the time that she recorded the deed of trust, Leah Ahn's share of the amount owed on the joint mortgage was "more than $200,000." Sanger Decl. ¶ 11. Despite a provision of the TICA requiring that any party to the TICA can only create an encumbrance as to that member's interest if the holder of encumbrance is also a party the TICA or if all other members consent, Leah Ahn did not ask for Priya Sanger's consent or notify her before encumbering the property with the deed of trust. Sanger Decl. ¶ 13 & Ex. A (TICA) §§ 10.4.D, 11.3.A. The Sangers

---

[6] The Sangers' motion erroneously states that the deed of trust was recorded within days after the state court entered judgment against Leah Ahn. Mot. (dkt. 4) at 3. That assertion overlooks the fact that the judgment was entered in 2012 and the deed of trust was recorded in 2013.

[7] This date does not correspond to either of the 2009 promissory notes in the record, both of which are dated August 14, 2009. RJN Ex. E.

4

discovered the deed of trust when they obtained a title report in late 2013. Sanger Decl. ¶ 10 (stating that the Sangers learned of the deed of trust "[i]n or about December 2013); Artiga-Purcell Opp'n Decl. Ex. A at 3–4 (admitting that the Sangers became aware of the deed of trust "on or about October 30, 2013").

In a July 2013 judgment debtor examination, Leah Ahn stated that she was unable to pay her debts as they mature. Utrecht Decl. Ex. A at 20:24–21:1.

In October of 2013, the Sangers obtained a writ of execution against Leah Ahn. RJN Ex. C. Two days later, Ahe Ahn sued Leah Ahn in Georgia, where Ahe Ahn resides, for failure to repay the $600,000 promissory note due on September 1, 2013. RJN Ex. G. Ahe Ahn's complaint attached that promissory note as well as an agreement purportedly also signed September 1, 2009 memorializing the same terms as that promissory note. *Id.* The agreement stated that on September 1, 2009 Ahe Ahn loaned Leah Ahn "an additional $150,000 to finance the house," that Leah Ahn owed Ahe Ahn a total of $600,000, and that the "Promissory Note and a Deed to Secure Debt must be executed and filed with the San Francisco Assessors Recorders Office to secure the above mentioned Principla [sic] of $600,000." *Id.* The agreement called for the parties to retain "Jin Choi & Associates, P.C." to draft the promissory note, and like both promissory notes, the agreement bears the notary stamp of June Choi. *Id.* In August of 2014, Ahe Ahn filed a motion to dismiss her action against Leah Ahn, stating that she had not perfected service and requesting leave "to refile when she is able to serve the Defendant properly." RJN Ex. H.

Despite the deed of trust, the Sangers "obtained an order of sale for [Leah Ahn's] interest in the Property," and a sheriff's sale was scheduled for June of 2014. Sanger Decl. ¶ 12; *see also* Artiga-Purcell Opp'n Decl. Ex. C at 2 (the Sangers' reply brief in support of a sale order, arguing that the state court could disregard the deed of trust as a junior encumbrance recorded after the abstract of judgment). Leah Ahn filed for bankruptcy one day before the sale was set to occur. Sanger Decl. ¶ 12; *see also* RJN Ex. J (summary of bankruptcy schedules). Ahn's summary of schedules disclosed $715,200 in assets (with real property accounting for $700,000 of that total) and $456,997.14 in liabilities (with "creditors holding secured claims" accounting for $450,809.23

of that total). RJN Ex. J. The record does not include Leah Ahn's schedules showing a more detailed breakdown of those categories. *See id.*

Ahe Ahn states that she learned in July of 2015 that Leah Ahn was at risk of a forced sale of the property at issue. Ahe Ahn Decl. ¶ 8. Ahe Ahn "cobbled together [her] life savings, including withdrawing the entirety of [her] retirement, and loaned it to Leah" in the form of a $131,098.05 cashier's check payable to the law firm representing the Sangers, which Ahe Ahn believed would fully satisfy the judgment against Leah Ahn and resolve her dispute with the Sangers.[8] *Id.* ¶¶ 8–9 & Ex. C (cashier's check). Ahe Ahn states that she provided additional loans over the following year to allow Leah to pay the Sangers, that the total amount of such loans (including the July 2015 cashier's check) was $146,401.74, and that Ahe Ahn has since subsisted on social security benefits and food stamps. *Id.* ¶¶ 10–12.

In August of 2015—which the Sangers assert without citation to evidence shortly followed Leah Ahn's bankruptcy discharge, Mot. (dkt. 4) at 3—the Sangers filed a notice of partial satisfaction of judgment reflecting that Leah Ahn had paid $131,098.05 towards the judgment against her. RJN Ex. K. According to Priya Sanger, Leah Ahn continued to refuse to pay her share of the joint mortgage. *See* Sanger Decl. ¶ 9.

In testimony given during an arbitration in 2017, Leah Ahn was initially unable to explain the two August 14, 2009 promissory notes, stating that she only remembered signing one document and believed that payment was due in 2014, and going so far as to suggest that the note purportedly due in 2013 was a forgery. Utrecht Decl. Ex. D at 177–93. Questioned by her own attorney the following day, Leah Ahn testified that, at the direction of her mother Ahe Ahn, she had executed both promissory notes in 2009 to allow Ahe Ahn discretion as to which due date to enforce. *Id.* at 367–70. Leah Ahn also testified in a 2017 deposition and 2017 arbitration hearing that she and Ahe Ahn entered an agreement in 2004 that on paper called for Leah Ahn to repay a loan from Ahe Ahn at a five or six percent interest rate, but that they had in fact agreed, contrary

---

[8] The Sangers note and submit evidence in reply that a July 2, 2015 order amending judgment indicated that interest remained to be calculated, Utrecht Reply Decl. Ex. C, and nearly a year later the Sangers prevailed in arguing on appeal that they were entitled to post-judgment attorneys' fees, *id.* Ex. D.

6

to the written terms, that Leah Ahn would not pay any interest and Ahe Ahn would instead be entitled to all of the profit when Leah Ahn eventually sold the property. Utrecht Decl. Exs. F, G. Leah Ahn testified that as of June 2017, she had not made any payments to Ahe Ahn on any promissory note, and that although she and Ahe Ahn had not entered a written agreement extending the deadline for payment, they had an oral agreement to extend the deadline indefinitely because Ahe Ahn understood that Leah Ahn was involved in disputes regarding the property. Utrecht Decl. Ex. G at 135:15–136:19.

Ahe Ahn filed for bankruptcy in 2017, listing assets totaling $846,250.00 (including the $600,000 loan to her daughter, which she indicated might not be collectible) and liabilities totaling $555,528.72. RJN Ex. L. On November 2, 2017, the United States Bankruptcy Court for the Northern District of Georgia granted the Sangers relief from the automatic stay in Ahe Ahn's bankruptcy case with respect to this action, permitting the Superior Court to make a judgment as to whether a fraudulent conveyance occurred, but stating that the Bankruptcy Court would "make a determination as to any remedies that may be granted." RJN Ex. M. On April 6, 2018, however, the Bankruptcy Court dismissed Ahe Ahn's case. RJN Ex. N. The Sangers assert without citation to evidence that the case was dismissed because Ahe Ahn made no further filings after the Sangers obtained relief from the automatic stay. Mot. at 7.

Also in 2017, with respect to *Leah* Ahn's bankruptcy, the United States Bankruptcy Court for the Northern District of California issued an order determining that the Sangers' 2012 abstract of judgment was invalid for failure to sufficiently identify the Sangers as judgment creditors. Utrecht Reply Decl. Ex. B. On appeal to the District Court, in an August 27, 2018 order not addressed by any party here, Judge Tigar reversed for lack of jurisdiction the Bankruptcy Court's grant of declaratory judgment that Sangers' lien was invalid, but affirmed the determination that it was invalid for the purpose of considering whether the lien should be avoided. *Sanger v. Ahn*, No. 17-cv-05182-JST (N.D. Cal. Aug. 27, 2018). An appeal by the Sangers to the Ninth Circuit remains pending. The record before this Court does not disclose the current status of Leah Ahn's bankruptcy case; counsel for the Sangers represented at the hearing that the bankruptcy has been discharged but Judge Tigar's order and one other collateral matter remain pending on appeal

7

before the Ninth Circuit.

The Sangers deposed Ahe Ahn in relation to a motion to set aside default judgment in this action on January 25, 2018. Utrecht Decl. ¶ 7 Ex. B. The Sangers' attorney asked Ahe Ahn about a witness by the name of Jin Choi or Jung Choi whose name appears on the promissory notes. *Id.* The transcript reads "Jung Choi," but counsel's declaration states that he asked about "Jin Choi," and as noted above, the name of the notary listed on the promissory notes is "June Choi." Ahe Ahn responded, "I think somebody who works in the notary office," and stated that she could not remember where the notary's office was. Utrecht Decl. Ex. B at 58:23–59:2.

In a March 5, 2018 deposition, Lance Ahn stated (according to the transcript) that June Choi is the wife of "Jang Choi," and Jang Choi was an attorney (or former attorney) who had gone to college with Ahe Ahn in Korea and either gave Ahe Ahn her first legal job in the United States "or at least he mentored her when she graduated from law school." Utrecht Decl. Ex. C at 71:24–72:16. The Sanger's motion and their attorney's declaration state, contrary to the transcript, that Lance Ahn testified regarding "Jin" Choi, as opposed to "June" or "Jang" Choi, and counsel's declaration states that Lance Ahn testified that "Jin" Choi had attended school with Ahe Ahn and given Ahe Ahn her first job in the United States. Mot. at 7–8; Utrecht Decl. ¶ 8. Lance Ahn also testified that, at his mother Ahe Ahn's request, Lance Ahn flew to San Francisco to record the deed of trust after having Leah Ahn's signature on the deed notarized. Utrecht Decl. Ex. C at 95–100.

An arbitrator's interim decision dated March 20, 2018 determined that Leah Ahn "violated the TICA by recording the deed of trust in favor of Ahe Ahn." Utrecht Decl. Ex. I at 47. The arbitrator noted that he could not bind Ahe Ahn because she was not a party to arbitration, but that his tentative remedy would be to order Leah Ahn to remove the deed of trust. *Id.* A subsequent arbitrator's order dated October 10, 2018 and award dated October 11, 2018 reaffirmed the conclusion that Leah Ahn violated the TICA by recording the deed and ordered that $304,894.45 of the outstanding joint mortgage debt be reallocated from the Sangers to Leah Ahn to account for arbitration fees and costs. Utrecht Decl. Ex. J at 3; *id.* Ex. K at 1, 6.

On March 23, 2018, Ahe Ahn filed another lawsuit against Leah Ahn in Georgia, again

8

seeking to enforce the 2009 promissory note and related agreement calling for repayment of $600,000 in 2013. RJN Ex. R. Five days later, Ahe Ahn filed an amended complaint no longer seeking to enforce the $600,000 promissory note from 2009, but instead attaching and seeking to enforce a different promissory note dated March 2, 2015 calling for Leah Ahn to pay Ahe Ahn $250,000 by the earlier of February of 2018 or when her residential property sold, in return for access to Ahe Ahn's retirement fund of $170,000 in order to pay off a lien against the property at 851 Lombard Street. *Id.* Leah Ahn did not disclose the $250,000 promissory note in discovery during arbitration, Utrecht Decl. ¶ 9, and Ahe Ahn did not disclose it on her schedules when she filed for bankruptcy in 2017, although she disclosed the purported $600,000 loan (noting that it was "potentially uncollectible") and security deed with respect to 851 Lombard Street. RJN Ex. L.

On July 20, 2018, Lance Ahn (as an agent of Ahe Ahn) recorded a notice of default as to the deed of trust. RJN Ex. T. The notice stated that $901,172.71 was due as of July 19, 2018 and that a sale date could be set ninety days after the notice of default. *Id.* After the Sangers discovered the notice of default, their counsel asked defense counsel if Defendants would voluntarily remove the notice. RJN Ex. N. Defense counsel responded that he did "not have an update as Mr. Ahn has been in Korea for a funeral," but that because "no foreclosure has been scheduled . . . there is nothing to enjoin." *Id.*

### B. Procedural History

The Sangers initiated this action by filing a complaint against Ahe Ahn in state court on March 17, 2017, bringing a single claim under the Uniform Voidable Transactions Act,[9] as codified at sections 3439.04 and 3439.07 of the California Civil Code. Artiga-Purcell Removal Decl. (dkt. 1-1) ¶ 2 & Ex. A (Compl.). The complaint alleges that 'some months after" the Sangers obtained a judgment against Leah Ahn requiring her to pay damages and to pay her share of mortgage payments going forward, Leah Ahn encumbered the property with a deed of trust in favor of Ahe Ahn, unbeknownst to the Sangers. Compl. ¶ 15. The Sangers asset that Leah Ahn conveyed the deed of trust to Ahe Ahn "with the actual intent to hinder, delay and defraud the

---

[9] The Sangers' complaint erroneously cites this statute as the "Uniform Voidable Transfers [sic] Act." Compl. at 5.

9

Sangers," *id.* ¶ 30, as purportedly evidenced by, among other factors: (1) Leah Ahn's inaccurate testimony at a debtor's examination that she was not aware of deeds of trust on the property other than the joint mortgage, *id.* ¶¶ 18–19; (2) Leah Ahn's insolvency, *id.* ¶¶ 18, 27; (3) multiple lawsuits involving Leah Ahn, such that she should have believed she would incur debts she was unable to pay, *id.* ¶ 22; (4) Leah Ahn's retention of custody and control of the property, *id.* ¶ 23; (5) the fact that the deed of trust was conveyed to a close family member, *id.* ¶ 24; (6) the Sangers' belief that the deed of trust served to transfer "substantially all of Leah Ahn's assets," *id.* ¶ 25; (7) the timing of the deed of trust, *id.* ¶ 26; and (8) the Sangers' belief that Leah Ahn did not receive equivalent value for the deed of trust, *id.* ¶ 28. On October 26, 2018, the Sangers amended their complaint to name Lance Ahn as an additional defendant. Artiga-Purcell Removal Decl. ¶ 3 & Ex. A.

After the Sangers moved for a preliminary injunction in state court, Lance Ahn removed to this court on the basis of diversity jurisdiction, and the Sangers refiled their motion in this court. *See* Artiga-Purcell Removal Decl. ¶ 5 & Ex. B; Notice of Removal (dkt. 1); Mot. Ahe Ahn consented to removal. Artiga-Purcell Removal Decl. ¶ 9 & Ex. I. On December 31, 2018, Ahe Ahn and Lance Ahn filed a motion for judgment on the pleadings (dkt. 19), which is not yet fully briefed and is not addressed in this order.

## III. ANALYSIS

### A. Legal Standard

A "preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Irreparable harm must be likely—it is no longer sufficient to grant a preliminary injunction upon a mere showing of a "possibility" of irreparable harm when the other factors weigh heavily in favor of the plaintiff. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). Nonetheless, the Ninth Circuit still evaluates the likelihood of success on a "sliding scale." *Id.* A preliminary injunction may be

warranted upon a showing of "*serious questions* going to the merits" as well as "a hardship balance that tips sharply toward the plaintiff," so long as the plaintiff is likely to suffer irreparable harm and the injunction is in the public interest. *Id.* (emphasis added).

Although a preliminary injunction is always extraordinary relief requiring careful consideration, *see Winter*, 555 U.S. at 24, the injunction that the Sangers request here seeks to preserve the status quo, and is not subject to the "extreme[]" scrutiny necessary where "a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*." *Cf. Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984).

### B. Likelihood of Success on the Merits

#### 1. Standard for Claims for Avoidance of Transfer

The Sangers seek to void the deed of trust pursuant to California Civil Code section 3439.04, which governs transactions voidable by present or future creditors. The Sangers do not rely on the test of section 3439.05, which only applies to creditors whose claims arose before the transactions or obligation sought to be voided.

"There are two theories under which a [creditor] may proceed under [section 3439.04]: actual fraud or constructive fraud." *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) (applying California law). Under the former theory, a plaintiff must show "actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1). The statute provides a number of non-exclusive factors may be considered in assessing intent:

(1) Whether the transfer or obligation was to an insider.

(2) Whether the debtor retained possession or control of the property transferred after the transfer.

(3) Whether the transfer or obligation was disclosed or concealed.

(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(5) Whether the transfer was of substantially all the debtor's assets.

(6) Whether the debtor absconded.

(7) Whether the debtor removed or concealed assets.

11

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

(11) Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b). "A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets," and is presumed to be insolvent if the debtor "is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute." Cal. Civ. Code § 3439.02(a)–(b).

As an alternative to showing actual intent to hinder, delay, or defraud, a plaintiff may also prevail on a theory of constructive fraud by showing that the debtor transferred property or incurred an obligation "[w]ithout receiving equivalent value in exchange" *and* at least one of the following: either the debtor "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction," or the debtor "[i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Cal. Civ. Code § 3439.04(a)(2). The statute defines "value" as follows:

> Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

Cal. Civ. Code § 3439.03.

A creditor may bring "an action for relief against a transfer or obligation" that meets one of the tests above, for remedies including but not limited to "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim" and, subject to principles of equity and applicable rules of procedure, "[a]n injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or other property of the transferee." Cal. Civ. Code § 3439.07(a). California authority indicates that an alleged fraudulent transferor is not a necessary

12

party in an action against a transferee to void the transfer. *Liuzza v. Bell*, 40 Cal. App. 2d 417, 425 (1940) (citing *Blanc v. Paymaster Mining Co.*, 95 Cal. 524 (1892)).

### 2. Prejudice to the Sangers

As a starting point, to bring a claim under the UVTA, a creditor must affirmatively show prejudice as a result of the challenged transfer. *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 80 (2001). The transfer must cause "property [the plaintiff] otherwise would be able to subject to the payment of [the plaintiff's] debt" to be placed "beyond [the plaintiff's] reach." *Id.* (citation and internal quotation marks omitted). Failure to establish such prejudice is grounds for dismissal. *Avila v. Bank of Am.*, No. 17-cv-00333-HSG, 2017 WL 4168534, at *3 (N.D. Cal. Sept. 20, 2017).

Defendants argue that the Sangers have not shown and cannot show such prejudice because the deed of trust did not prevent the Sangers from obtaining an order of sale before Leah Ahn filed for bankruptcy. Opp'n (dkt. 14) at 9–10. This argument neglects that both the Bankruptcy Court and Judge Tigar have since determined that the Sangers' existing judgment lien is invalid as a result of the improper form of their abstract of judgment.[10] If that determination stands on appeal, and the Sangers are required to record a new abstract memorializing their judgment, the argument that the Sangers' lien takes precedence as a result of its recording before the deed of trust would no longer apply. Under these circumstances, and taking into account that Defendants here were not parties to the prior case where the Sangers obtained their sale order and did not raise any arguments at that time about the deed of trust, the Court cannot say that the Sangers' past success in obtaining an order of sale demonstrates a lack of prejudice caused by the deed of trust.

Defendants also briefly argue that because Leah Ahn's bankruptcy prevented the Sangers from proceeding with a sheriff's sale, it is the bankruptcy and not the deed of trust that prevents

---

[10] Although Judge Tigar vacated the Bankruptcy Court's declaratory judgment, the Sangers would nevertheless likely be precluded from asserting the validity of their abstract of judgment in a subsequent action because Judge Tigar affirmed the Bankruptcy Court's determination that the lien was invalid in the context of whether it should be avoided in the bankruptcy. *See Samara v. Matar*, 5 Cal. 5th 322, 327 (2018) (discussing the elements of issue preclusion under California law). Even regardless of any preclusive effect, the determination of invalidity in the bankruptcy proceeding at least suggests that another court considering the issue would reach the same conclusion.

13

the Sangers from reaching the property to satisfy their claim, and the deed of trust therefore does not prejudice them. Opp'n at 10. There is no evidence regarding the current status of Leah Ahn's bankruptcy or whether it would prevent *Defendants* from selling the property based on the deed of trust and their notice of default. Even if the Sangers remain barred by the bankruptcy from reaching the property at this time, the possibility that Defendants could proceed with a sale before the Sangers creates at least "serious questions going to the merits" of whether the deed of trust prejudices the Sangers. *See Cottrell*, 632 F.3d at 1132.

### 3. Actual Intent to Hinder, Delay, or Defraud

The Sangers have also demonstrated serious questions going to the merits of whether the deed of trust was recorded "[w]ith actual intent to hinder, delay, or defraud" the Sangers. *See* Cal. Civ. Code § 3439.04(a)(1).

From the current record it is not entirely clear whether Ahe Ahn in fact lent Leah Ahn $400,000 in 2004 and $200,000 in 2009. There is some evidence supporting the existence of those loans. In addition to the promissory notes (Utrecht Decl. Ex. E) and the loan contract filed with Ahe Ahn's 2013 lawsuit (RJN Ex. G), Ahe Ahn so states in her declaration, and Leah Ahn informed the Sangers of those loans well before she ceased making mortgage payments in 2011. Priya Sanger indicates in her reply declaration that although she now doubts the veracity of those statements, she had no reason to disbelieve them at the time. It is also not clear how Leah Ahn, who does not appear to have had significant assets of her own at any relevant time, would have been able to purchase her interest in the property without the purported loan from Ahe Ahn. On the other hand, the two conflicting promissory notes and lack of any documentation of payment from Ahe Ahn to Leah Ahn tend to call into question the existence of these loans. Priya Sanger's statement that the refinancing planned for 2009 never occurred raises further questions regarding the purported loan of $200,000 that year, and Leah Ahn's disclosure of only approximately $450,000 in liabilities when she filed for bankruptcy in 2014 (RJN Ex. J) is inconsistent with her purportedly owing $600,000 to Ahe Ahn at that time.

Even if Ahe Ahn in fact provided $600,000 to Leah Ahn, and assuming that at least one of the 2009 promissory notes is valid, it is not at all clear that Leah Ahn recorded the deed of trust

14

based on bona fide intent to repay Ahe Ahn rather than intent to hinder the Sangers' collection efforts. Despite both 2009 promissory notes' reference to a contemporaneous "Deed to Secure Debt," and the provision of the agreement filed with Ahe Ahn's first Georgia lawsuit requiring such a deed to be "filed with the San Francisco Assessors Recorders Office," RJN Ex. G, there is no evidence that such a deed existed in 2009 or was ever recorded. Leah Ahn testified in 2017 that Ahe Ahn had agreed to extend the time for Leah Ahn to repay the purported debt indefinitely. Utrecht Decl. Ex. G at 135:15–136:19. The lapse of both of the inconsistent deadlines for repayment of the 2009 promissory notes with no apparent action by Ahe Ahn except for a voluntarily dismissed lawsuit in Georgia, Ahe Ahn's decision to seek repayment of only the 2015 promissory note in her more recent lawsuit, and Ahe Ahn's stated voluntary decision to transfer her retirement fund to Leah Ahn and subsist on social security payments and food stamps, also call into question whether Ahe Ahn ever intended to collect the purported $600,000 debt from Leah Ahn—or in other words, whether the purported transfer of those funds was in effect a gift rather than a loan. If Ahe Ahn did not wish to collect that purported debt, it would follow that Leah Ahn's motivation for recording the deed of trust was not to repay her, but to take the property out of the reach of the Sangers. Such a possibility also raises questions as to whether Leah Ahn received equivalent value for recording the deed of trust, even if Leah Ahn had in fact received $600,000 from Ahe Ahn years earlier.

Other factors that the statute identifies as relevant to assessing intent further suggest that Leah Ahn's intent was improper. Because Ahe Ahn is Leah Ahn's mother, "the transfer or obligation was to an insider." Cal. Civ. Code § 3439.04(b)(1). Leah Ahn "retained possession or control of the property" despite the deed of trust. *Id.* § 3439.04(b)(2). Before Leah Ahn recorded the deed of trust, she "had been sued or threatened with suit." *Id.* § 3439.04(b)(4). And Leah Ahn was insolvent at the time of the recording and thereafter. *See id.* § 3439.04(b)(9).

The Sangers' have raised serious questions going to the merits as to whether Leah Ahn recorded the deed of trust "[w]ith actual intent to hinder, delay, or defraud" the Sangers. *See id.* § 3439.04(a)(1).

### C. Irreparable Injury

The Ninth Circuit has "join[ed] the majority of circuits in concluding that a district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant." *In re Estate of Marcos, Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994). In a subsequent decision, the Ninth Circuit held that a district court did not abuse its discretion in concluding that a defendant bank's insolvency created "a significant threat of irreparable injury." *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1141 (9th Cir. 2005) (citing *Estate of Marcos*, 25 F.3d at 1480). Leah Ahn's undisputed insolvency creates a risk of irreparable harm here because sale of her interest in the property would likely alienate her only significant asset to an innocent buyer, and therefore restrict or at least significantly complicate the Sangers' efforts to collect on the judgment in their favor. Moreover, as recognized by the arbitrator (RJN Ex. K at 3, 4) but not addressed by the parties, any potential foreclosure sale of Ahn's interest creates "the possibility that a non-signatory to the TICA will take ownership of [Leah] Ahn's interest in the [tenancy-in-common]," which would deprive the Sangers of the stability assured by the TICA with respect to their interest in real property. The Court concludes that Defendants' notice of default on the deed of trust, which specifically contemplates a subsequent notice of sale, establishes a likelihood of irreparable injury in the absence of injunctive relief.

Defendants argue that the Sangers' delay in filing their present motion weighs against a finding of imminent irreparable injury. Opp'n at 15–16 (citing, *e.g.*, *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985)). The Sangers discovered the notice of default in October of 2018 and immediately attempted, repeatedly, to resolve the issue informally with defense counsel. Reply (dkt. 15) at 12–13; Utrecht Decl. ¶¶ 15–18 & Exs. L–N. The Sangers moved for a preliminary injunction in state court the following month, Utrecht Decl. ¶ 19, and renewed their motion approximately one week after Defendants removed to this Court, *see* Notice of Removal; Mot. That timeline is not inconsistent with impending irreparable harm, and requiring the Sangers to wait to seek relief on an expedited basis after Defendants schedule a foreclosure sale would serve no purpose. *Cf. Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d

16

1211, 1213 (9th Cir. 1984) (holding that a delay of five years weighed against granting a preliminary injunction).

### D. Balance of Equities

The balance of equities sharply favors an injunction to preserve the status quo. As discussed above, if no injunction issues and Defendants are permitted to sell the property, the Sangers would likely be left without a remedy for the judgment they obtained in state court affirming a significant arbitration award against Leah Ahn. Such a result would be unjust if the deed of trust is voidable as intended to defraud, hinder, or delay, as the Sangers contend and as the Court here holds is supported by a showing of serious questions of the merits. The potential harm to Defendants is mere delay: if the deed of trust is determined to be valid and not voidable, Defendants will remain free to seek a sale, if they so choose, after such a determination is made. Defendants note Ahe Ahn's "frail health" and "meager financial resources," Opp'n at 17, but Ahe Ahn states that she voluntarily exhausted her financial resources, years after her health declined, in an effort to prevent a sale of the property, and Defendants do not explain why such circumstances should now justify permitting Ahe Ahn to force such a sale while the status of the deed of trust remains in doubt.[11]

### E. Public Interest

This is primarily a dispute between private parties with limited effect on the public at large. Nevertheless, the Court finds that an injunction preserving the status quo is in the public interest. Allowing Defendants to proceed with a sale while the validity of the deed of trust remains in dispute would harm the public interest, both because such a sale risks subjecting an innocent purchaser to litigation regarding the status of the purchaser's title, and because the public interest

---

[11] One issue not addressed by the parties is whether the Sangers, based on their judgment against Leah Ahn, could themselves force a sale of the property while this litigation is pending, potentially nullifying Ahe Ahn's disputed security interest in the property. Given the ruling against the validity of the Sangers' judgment lien in the context of Leah Ahn's bankruptcy, such an outcome does not appear to be imminent. The parties are nevertheless encouraged to reach a stipulation to preserve the status quo. If the parties are unable to do so, Defendants may request that the Court revisit this issue if any of the following occur: (1) the Sangers record a notice of sale; (2) Judge Tigar's ruling regarding the Sanger's lien is reversed by the Ninth Circuit; (3) the Sangers obtain a new judgment lien; or (4) other circumstances indicate that the Sangers will pursue a sale of the property while this litigation is pending.

17

favors resolving and remedying disputes on their merits rather than through de facto alienation of the only assets available as potential relief.

### F. Bond to Secure Injunction

A "court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65. Defendants request a bond "in excess of $600,000," the value secured by the deed of trust, Opp'n at 18, but do not explain why a later determination that they were wrongfully *temporarily* enjoined from foreclosing on the property would warrant damages in the full value of the deed. On the other hand, although the Court has discretion to "dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct," *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (2003), there is at least some potential harm to Defendants here in delaying their ability to exercise their rights if the Court ultimately determines that the deed of trust is valid. The Sangers request that the Court require no bond, but state in their reply that a bond of "perhaps $10,000" would be "commensurate with the nominal annoyance Defendants might face from the injunction." Reply at 15. Defendants have made no showing that a larger bond is warranted, and the Court ORDERS that that the Sangers provide a bond in the amount of $10,000.

## IV. CONCLUSION

For the reasons discussed above, the Sangers' motion is GRANTED. The Court hereby preliminarily RESTRAINS and ENJOINS Defendants, their agents, servants, employees, attorneys, and all others in active concert or participation with Defendants from recording a notice of sale, conducting a foreclosure sale, or otherwise foreclosing, premised on the deed of trust recorded as Document 2013-J620402-00, of the real property commonly known as 847-849-851 Lombard Street, San Francisco, CA, until after a final judgment has entered in this case or this

/ / /

/ / /

/ / /

/ / /

Court orders otherwise.

The Sangers shall provide a bond in the amount of $10,000 no later than January 18, 2019.

**IT IS SO ORDERED.**

Dated: January 11, 2018

JOSEPH C. SPERO
Chief Magistrate Judge