UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIYA SANGER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>AHE AHN, et al.,<br><br>    Defendants. | Case No. 18-cv-07204-JCS<br><br>**ORDER REGARDING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 53 |

## I. INTRODUCTION

Plaintiffs Priya Sanger and Michael Sanger are co-own a residential building in San Francisco as a tenancy in common with non-party Leah Ahn and another individual who is not involved with the facts of this case. The Sangers brought this action under California's Uniform Voidable Transactions Act (the "UVTA") challenging a deed of trust recorded on March 18, 2013 by Defendant Lance Ahn (Leah Ahn's brother) on behalf of Defendant Ahe Ahn (Leah Ahn and Lance Ahn's mother), which placed in trust Leah Ahn's interest in the tenancy in common, purportedly to secure Leah Ahn's repayment of a promissory note in favor of Ahe Ahn. The Ahns[1] now move for summary judgment. The Court held a hearing on October 11, 2019. For the reasons discussed below, the motion is DENIED.[2]

## II. BACKGROUND

Most of the facts relevant to the arguments raised in the present motion are not in dispute. The Sangers and Leah Ahn, along with another non-party, own a residential building in San

---

[1] This order uses the term "the Ahns" in some instances to refer only to Defendants Lance Ahn and Ahe Ahn. Nothing in this order should be construed as attributing any litigation conduct in this case to non-party Leah Ahn.
[2] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

1    Francisco as tenants in common, subject to a mortgage on the property as a whole. The tenancy in
2    common is governed by a contract, the "Tenancy in Common Agreement" ("TICA"), which sets
3    forth each cotenant's interest in the property, share of the mortgage obligation, and other rights
4    and duties. Leah Ahn's share of the tenancy in common has at all relevant times been worth more
5    than her share of the amount due on the mortgage but less than the total amount due.

6    The Sangers contend that Leah Ahn has been delinquent in her mortgage payments and
other obligations for many years. They obtained a ruling to that effect from an arbitrator, which a
California state court affirmed as a judgment in 2012. The judgment was amended several times
in the years since then to reflect increasing amounts owed by Leah Ahn. The Sangers obtained a
writ of execution against Leah Ahn in 2013 and an order of sale for her interest in the property in
2014, but Leah Ahn filed for bankruptcy, halting a planned sheriff's sale. In 2017, a bankruptcy
court determined that the Sangers' abstract of judgment was invalid for failure to sufficiently
identify the Sangers and judgment creditors, and Judge Tigar affirmed that decision on appeal to
the district court in 2018. An appeal of that decision to the Ninth Circuit remains pending, with
oral argument scheduled for October 22, 2019. *See Ahn v. Sanger*, No. 18-16794 (9th Cir.).

The Sangers filed this action in state court seeking to void the deed of trust and recover
damages under the UVTA. The Ahns removed to this Court, and this Court granted the Sangers'
motion for a preliminary injunction barring the Ahns from foreclosing under the deed of trust
pending the outcome of litigation. The Sangers filed their operative first amended complaint
("FAC," dkt. 41) after the Court granted in part a motion for judgment on the pleadings. The
Court recently denied a motion by the Sangers for leave to amend their complaint further after the
deadline set by a scheduling order for amendment had expired.

In their present motion for summary judgment, the Ahns contend that the UVTA does not
apply because there was no "transfer" of an "asset" as those terms are defined in the statute, as a
result of the total amount due on the mortgage exceeding the value of Leah Ahn's interest in the
tenancy in common. Mot. (dkt. 53) at 4–10. The Ahns also argue that they are entitled to
judgment on the Sangers' claim against Lance Ahn, because Lance Ahn was is neither the
transferee nor a person for whose benefit a transfer was made, and because the purported defects

2

in the Sangers' underlying claim are fatal to any derivative claim against Lance Ahn based on a theory of conspiracy. *Id.* at 10–11. The Ahns' motion also briefly suggests that the Ahns are entitled to summary judgment because the Sangers are unsecured creditors. *Id.* at 8.

The Ahns' motion does *not* include a number of arguments first raised in their reply brief: (1) whether the Sangers' complaint sufficiently *alleged* that Leah Ahn's interest was of greater value than relevant encumbrances, an issue that is regardless better suited for motion at the pleading stage than at summary judgment, *see* Reply (dkt. 67) at 7–8; (2) whether the Sangers should be estopped from claiming they are secured creditors, an issue that is regardless irrelevant to the outcome of this motion for reasons discussed below, *see id.* at 8–10; (3) whether Lance Ahn's role was merely "administrative" such that he cannot be held liable as a coconspirator, *id.* at 12; and (4) whether the opinions of the Sangers' expert witness regarding the value of the property should be excluded,[3] *id.* at 13–15. The Sangers had no opportunity to respond to these arguments, and the Court declines to consider them.

## III. ANALYSIS

### A. Legal Standard

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "'specific facts showing there is a genuine issue for trial.'" *Id*. (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely

---

[3] The case management order in this case calls for challenges to expert testimony to be presented in *Daubert* motions, to be filed separately from but heard concurrently with motions for summary judgment. *See* Case Mgmt. & Pretrial Order (dkt. 40) § III. Pursuant to the parties' stipulation, the Ahns filed their summary judgment motion earlier than the originally scheduled date for such motions, well before the deadline for completing expert discovery. If the Ahns wish to file a *Daubert* motion, they may do so on the schedule discussed at the October 11, 2019 hearing.

disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986). The non-moving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Thus, it is not the task of the court to scour the record in search of a genuine issue of triable fact. *Id.*; *see Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3).

A party need not present evidence to support or oppose a motion for summary judgment in a *form* that would be admissible at trial, but the *contents* of the parties' evidence must be amenable to presentation in an admissible form. *See Fraser v. Goodale*, 342 F.3d 1032, 1036−37 (9th Cir. 2003). Neither conclusory, speculative testimony in affidavits nor arguments in moving papers are sufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979). On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant, *Scott v. Harris*, 550 U.S. 372, 378 (2007), but where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

**B. The UVTA**

The Sangers seek to void Ahe Ahn's deed of trust pursuant to California Civil Code section 3439.04, which governs transactions voidable by present or future creditors. FAC ¶ 64.[4] "There are two theories under which a [creditor] may proceed under [section 3439.04]: actual fraud or constructive fraud." *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) (applying California law). Under the former theory, a plaintiff must show "actual intent to hinder, delay, or defraud any creditor of the debtor," which may be based on a number of non-exclusive factors enumerated in the statute. Cal. Civ. Code § 3439.04(a)(1), (b). As an alternative to showing

---

[4] The Sangers do not rely on the test of section 3439.05, which only applies to creditors whose claims arose before the transactions or obligation sought to be voided.

4

actual intent to hinder, delay, or defraud, a plaintiff may also prevail on a theory of constructive fraud by showing that the debtor transferred property or incurred an obligation "[w]ithout receiving equivalent value in exchange" *and* at least one of the following: either the debtor "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction," or the debtor "[i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Cal. Civ. Code § 3439.04(a)(2).

The Ahns' arguments here focus not on whether the deed of trust was "fraudulent" within the meaning of the UVTA,[5] but instead whether it was a transfer of an "asset" as that term is defined by the statute, and whether the Sangers were prejudiced by the purported transfer.

The UVTA applies to "transfers," defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance." Cal. Civ. Code § 3439.01(m). The statute defines an "asset" broadly as "property of a debtor," but excludes (among other exceptions) "[p]roperty to the extent it is encumbered by a valid lien." *Id.* § 3439.01(a). "Property" is defined as "anything that may be the subject of ownership." *Id.* § 3439.01(j). A "valid lien" is defined as "a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." *Id.* § 3439.01(n).

To bring a claim under the UVTA, a creditor must affirmatively show prejudice as a result of the challenged transfer. *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 80 (2001). The transfer must cause "property [the plaintiff] otherwise would be able to subject to the payment of [the plaintiff's] debt" to be placed "beyond [the plaintiff's] reach." *Id.* (citation and internal quotation marks omitted).

---

[5] The Sangers argue briefly in their opposition brief that the Ahns "admit the Sangers' allegations of fraud." Opp'n at 6. The motion includes no such admission. More accurately, the present motion does not challenge the Sangers' ability to produce evidence at least establishing a genuine issue of material fact as to whether the purported transfer was fraudulent within the meaning of the UVTA. The Sangers therefore had no obligation to present such evidence with their opposition brief, and the Court has no occasion to consider whether they could do so.

5

### C. Encumbrances on Tenancies in Common and the UVTA

The Ahns rely heavily on a California appellate court's decision in *Schoenfeld v. Norberg*, 11 Cal. App. 3d 755 (1970). That case did not involve a claim under the UVTA, but instead a judgment creditor's efforts to force a sale of a judgment debtor's home. *See id.* at 758–59. The home was worth $35,000, it was subject to other liens and encumbrances of $9,099, and the judgment debtor was entitled to a homestead exemption of $12,500. *Id.* at 759. The trial court ordered a sale without resolving whether the judgment debtor and his wife owned the home as community property or as a joint tenancy. *Id.* The appellate court reversed, holding that the trial court erred in failing to resolve that question because if the home was community property, the entirety of it could be reached to satisfy the husband's debt, while if it was a joint tenancy, only the husband's interest could be sold. *Id.* at 760–61. The appellate court also held that, if the property was held as a joint tenancy and the husband's interest was to be sold, the homestead exemption and encumbrances would apply in full to that one-half interest. *Id.* at 761–67. The appellate court's analysis of encumbrances reads as follows:

> One cotenant may encumber his undivided interest in property without the consent of the other tenants; the encumbrance affects his interest only. (*Haster v. Blair* (1940) 41 Cal.App.2d 896, 898; 13 Cal.Jur.2d, Cotenancy, § 38, p. 325.) A creditor may levy only on the interest of the debtor joint tenant (*Rupp v. Kahn* (1966) 246 Cal.App.2d 188, 195; 2 Miller and Starr, Current Law of California Real Estate, § 535, pp. 736–737). Where an encumbrance affects only the debtor tenant's interest, it obviously must be discharged in full in an execution sale.
>
> In the present case, the encumbrance is a mortgage jointly given by both husband and wife on the entire property. Therefore the question arises whether the sale must net sufficient proceeds to discharge the entire encumbrance in order for the husband's interest to be sold or whether the encumbrance will be apportioned and only one-half of it discharged. Only the first alternative is workable. In the case of a joint encumbrance, each cotenant's interest, as part of the entirety, is vulnerable to sale for the total debt; a creditor may foreclose against one cotenant's interest to satisfy the debt. (Powell on Real Property, § 607, p. 630.) Therefore, the mortgage, while jointly given by husband and wife, constitutes an encumbrance on husband's interest. If only one-half of the debt secured by the encumbrance were discharged, the creditor could still go against the interest of the purchaser to obtain satisfaction of the other half of the debt. Such a result would be contrary to the requirement of section 1254 [of the

6

> California Civil Code at the time of the decision[6]] that all liens and encumbrances on the interest to be sold be discharged.
>
> Therefore, we conclude that the husband's interest cannot be sold unless its value exceeds the amount of the joint encumbrance. The purchaser, having in effect paid off the entire encumbrance, would be entitled to contribution from the other tenant or tenants (in this case the wife). (*Conley v. Sharpe* (1943) 58 Cal.App.2d 145, 155–156; *Jamison v. Cotton* (1933) 136 Cal.App. 127, 129.)
>
> . . . Under the facts which have been determined in this case, the property cannot be sold if it is held in joint tenancy; the husband's interest does not exceed the sum of the joint encumbrance and the homestead exemption.

*Id.* at 765–67. The *Schoenfeld* court acknowledged that its holding established "severe limitations . . . on the situations in which a sale of property held in cotenancy between the judgment debtor-homestead claimant and another party could be ordered," but concluded that it was bound by statutory language "apparently adopted without consideration of encumbrances on jointly owned property." *Id.* at 766. A more recent California appellate decision quoted *Schoenfeld* for the proposition that a debtor's interest in a tenancy in common "can be sold at execution only if its appraised value exceeds the value of any homestead exemption plus the *total* value of *joint* encumbrances *on the entire property*," but that case involved attorney malpractice claims, and *Schoenfeld* was at most tangentially relevant to its outcome. *Dang v. Smith*, 190 Cal. App. 4th 646, 661 (2010).

The Sangers argue that *Schoenfeld* is inapposite because it considered power to order a judgment sale rather than the definition of an "asset" under the UVTA, but cite no authority distinguishing *Schoenfeld* or reaching a different conclusion with respect to the UVTA. The only case cited by the Sangers at all relevant to this issue is *Romo v. Stewart Title of California*, 35 Cal. App. 4th 1609 (1995), which explains that a buyer at a nonjudicial foreclosure takes title subject to any senior liens.

The Ninth Circuit distinguished *Schoenfeld* in a 1991 bankruptcy case not cited by either party here, holding "that *Schoenfeld* is a case about powers of sale rather than a case about

---

[6] The relevant statutes have since been moved to the Code of Civil Procedure and renumbered. *See Dang v. Smith*, 190 Cal. App. 4th 646, 661 n.9 (2010). As discussed in a separate footnote below, but not addressed by *Dang* or other recent decisions citing *Schoenfeld*, changes to the statutes would seem to undermine *Schoenfeld*'s reasoning.

7

valuation." *In re Reed*, 940 F.2d 1317, 1323 (9th Cir. 1991). Much like in *Schoenfeld*, the bankruptcy debtor in *Reed* held a residence as a joint tenancy with his wife, and the value of encumbrances and his homestead exemption exceeded the value of his one-half interest, but not the value of the residence as a whole. *Id.* at 1322–23 & nn.6, 9. The debtor and his wife sold the home while the bankruptcy was pending. *Id.* at 1320. The Ninth Circuit affirmed a preliminary injunction issued by the bankruptcy court requiring the debtor to turn over net proceeds of the sale to the bankruptcy estate. *Id.*

The Ninth Circuit acknowledged that "[c]ases interpreting *Schoenfeld* have strictly adhered to its mandate that, when calculating a Debtor's equity in a joint-tenancy interest for creditor sale purposes, one must subtract the full value of the outstanding liens and encumbrances and the homestead exemption from the Debtor's one-half interest in the fair market value," and no sale can be ordered on behalf of a creditor where the result is negative. *Id.* at 1322 (citing bankruptcy court decisions).[7] The panel stated two independent reasons for its conclusion that *Schoenfeld* did not allow the debtor to keep the proceeds of the sale that actually occurred: first, that a bankruptcy trustee (unlike a normal creditor) has the authority to compel the sale of an entire joint tenancy under certain circumstances and "*Schoenfeld* itself makes it clear that there is no problem and its

---

[7] This Court has serious doubts both as to whether *Schoenfeld* was correctly decided at the time and, if it was, as to whether it remains good law in light of subsequent statutory amendments. *Schoenfeld* relied on a then-existing section of the Civil Code providing that, when a homestead exemption is claimed, then "'[i]f, from the [appraiser's] report, it appears to the judge that the land claimed exceeds in value, over and above all liens and encumbrances thereon, the amount of the homestead exemption, and that it cannot be divided, he must make an order directing its sale under the execution.'" *Schoenfeld v. Norberg*, 11 Cal. App. 3d 755, 761–62 (1970) (quoting Cal. Civ. Code § 1254) (second alteration in original). The statute discusses circumstances where a judge *must* order a sale; it is not clear that a judge would *lack* such authority if those conditions were not met. Regardless, section 1254 of the Civil Code was repealed in 1983. The current equivalent statute includes the following somewhat similar provision: "The court shall make an order for sale of the dwelling subject to the homestead exemption, unless the court determines that the sale of the dwelling would not be likely to produce a bid sufficient to satisfy any part of the amount due on the judgment pursuant to Section 704.800 [requiring a bid to exceed all exemptions, liens, and encumbrances]." Cal. Civ. Proc. Code § 704.780(b). Based on the plain language of the current statute, it appears that even where total encumbrances on the property as a whole exceeded the value of a cotenant's individual share, a court would be required to order a sale if it determined that a buyer—perhaps another cotenant, or perhaps a third party willing to rely on the right to receive contribution from other cotenants—would likely bid high enough to satisfy the full encumbrance. In this case, however, *Schoenfeld* is inapposite even if valid, and the Court need not resolve whether the California Supreme Court would likely follow its rule.

8

formula need not be applied when the property is subject to sale in its entirety," and second, that "[t]o hold that there is no value to a Debtor's interest in an asset unless that interest exceeds the full value of all outstanding encumbrances and the homestead exemption would also ignore the final mandate of *Schoenfeld*" by disregarding *Schoenfeld*'s acknowledgment that a purchaser who paid off the full encumbrance would be entitled to contribution from cotenants. *Id.* at 1323.

The relevant case law provides little guidance as to how the UVTA applies to encumbrances on tenancies in common. In the absence of precedent so holding, this Court declines to adopt the unintuitive rule that a fractional interest in a tenancy in common must exceed the value of encumbrances on the property as a whole to constitute an "asset." As the Court noted at the hearing, such a rule would countenance intentionally fraudulent transfers of assets with real net value so long as a total encumbrance on the whole of a tenancy in common exceeded the value of a defendant's fractional interest, regardless of the how the value of that interest compares to a proportionate share of the encumbrance.[8] Such a rule would be particularly inappropriate under the circumstances of this case, where the Sangers are cotenants in the property at issue and would likely have avenues to reach the property that are not available to a typical creditor.[9] *See* Sanger

---

[8] The Ahns rely on a decision of the Eight Circuit Bankruptcy Appellate Panel stating that a court cannot "substitute its own definition for the term 'asset'" for the one provided by the Minnesota's version of the UVTA. *See In re Wintz Cos.*, 230 B.R. 848, 861 (B.A.P. 8th Cir. 1999). *Wintz* reversed a bankruptcy court for finding value based on a stream of rental income rather than comparing the assessable value of the property at issue to encumbrances on the property. The decision does not speak to whether a cotenant's interest should be compared to full or proportionate encumbrances. To the extent that the reasoning of *Wintz* might be read as inconsistent with the decision here, this Court would respectfully find such reasoning to be unpersuasive.

[9] The Ahns argue in their reply brief that any other interest the Sangers might have had under the TICA were extinguished by the Sangers' choice to obtain a judgment. Reply at 5. That may be so for the amount Leah Ahn owed at the time of the judgment, but does not account for Leah Ahn's purported continuing failure to pay her share of the mortgage. *See* Sanger Decl. re Prelim. Inj. (dkt. 6) ¶ 9. Along the same lines, Leah Ahn's alleged failure to make payments after the date the deed of trust was recorded undermines the Ahns' argument that the Sangers have not shown harm resulting from the deed of trust because a lien purportedly created by the TICA (as asserted by the Sangers, but disputed by the Ahns) could have priority of the deed of trust. Even if that were so for payments Leah Ahn failed to make before the deed of trust was recorded, it would not hold true for payments after that date. The Ahns also argue that the claim alleged in the Sangers' complaint is based solely on the judgment, but rely for that assertion on the Sangers' characterization of their *original* complaint in a brief on a previous motion, without addressing the operative first amended complaint, which is not so limited. *See* Reply at 5; FAC ¶¶ 15, 40, 44, 63, 66 (alleging that Leah Ahn continues to fail to pay her share of the mortgage and asserting that the deed of trust impaired the Sangers' ability to satisfy not only the judgment against Leah Ahn, but

Decl. (dkt. 64) ¶ 6 (stating that the Sangers would pay down their share of the mortgage if needed to obtain a sale of Leah Ahn's share of the property); Sanger Decl. Ex. A (TICA) § 14.8 (providing for a right of nonjudicial foreclosure in the event of default); *Romo v. Stewart Title of Cal.*, 35 Cal. App. 4th 1609, 1614 (1995) (explaining that a nonjudicial foreclosure sale may be conducted regardless of senior liens, with the buyer taking title subject to such liens); *cf. Reed*, 940 F.2d at 1323 (distinguishing *Schoenfeld* in the context of bankruptcy in light of a bankruptcy trustee's greater power to effect a sale as compared to a typical creditor).

The language of the UVTA does not compel a holding that a tenancy-in-common interest is not an "asset" where a shared mortgage exceeds the value of the individual interest, but the individual share of that mortgage does not. The Court declines to so hold. While there might be circumstances where *Schoenfeld* could nullify any *prejudice* as a result of a transfer of a fractional interest of lesser value than an encumbrance on the property as a whole, because *Schoenfeld*'s bar against a subsequent forced sale would result in the property remaining outside the creditor's reach regardless of whether the transfer occurred, this is not such a case.

### D. Unsecured Creditors and the UVTA

The parties dispute whether the Sangers have a secured interest in the property at issue. The Court need not decide that issue, because the UVTA protects both secured and unsecured creditors.

The Ahns rely on a 1994 California decision and a 2015 Utah decision for the proposition that unsecured creditors cannot proceed under the UVTA. Mot. at 8 (citing *Tassone v. Tovar*, 28 Cal. App. 4th 765, 769 (1994); *Rupp v. Moffo*, 358 P.3d 1060, 1065 (Utah 2015)). In both cases, the relevant courts determined that senior encumbrances on or exemptions applicable to the properties at issue exceeded the value of the properties as a whole,[10] and that either the plaintiffs were not harmed by the transfers or that no "transfer" of an "asset" occurred within the meaning of the statute. *Tassone*, 28 Cal. App. 4th at 768–69; *Rupp*, 358 P.3d at 1064–65. That proposition is

---

also "other obligations under the TICA").

[10] These cases were not faced with the question of whether to compare encumbrances on the property as a whole to the value of a fractional interest, as discussed above in this order's consideration of *Schoenfeld*.

10

1 neither controversial nor disputed in the present case.

2 The Ahns quote a phrase from *Rupp* stating that "unsecured creditors are not harmed because they would never have been able to recover their debt by means of the encumbered property," but fail to acknowledge that the phrase appears in a discussion of "property that is fully encumbered by a valid lien." *See Rupp*, 358 P.3d at 1064–65; Mot. at 8. *Rupp* explicitly acknowledges that Utah's codification of the UVTA, which is materially identical to California's, contains no "indication that a creditor's standing is contingent on any actual interest in the property at issue." *Rupp*, 358 P.3d at 1063.

To the extent that *Tassone* could be read as suggesting, as an alternative to its clearer holding that the debtor's homestead exemption exceeded the value of the property at issue, that a creditor must have a lien on the property purportedly transferred in order to proceed under the UVTA, it is contrary to the language of the statute. A more recent California decision has explained that a plaintiff need not even have a judgment, much less a lien, at the time of the challenged transfer:

> AUIC also argues Potter did not have a "claim" against Tovar[11], and thus was not a "creditor" when Tovar executed the Release, because Potter did not have a judgment against Tovar at the time. While AUIC is correct that a creditor under the UVTA is "a person that has a claim," the word "claim" is not as narrowly defined as AUIC contends. With an exception not pertinent here, a claim is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, *secured, or unsecured*." (§ 3439.01, subd. (b).)
>
> The plain language of section 3439.01 demonstrates an individual need not have a judgment to have a claim, as does section 3439.04, which provides certain transfers are voidable as to a creditor "whether the creditor's claim arose before or after the transfer was made" (§ 3439.04, subd. (a)). Though Potter did not have a judgment against Tovar when the Release was executed, he had a claim against him. He and Tovar were thus, respectively, a creditor and debtor under the terms of the UVTA. (§ 3439.01, subds. (c), (e).)

*Potter v. All. United Ins. Co.*, 37 Cal. App. 5th 894, 909 (2019) (emphasis added).

The UVTA is clear that an unsecured creditor may bring a claim to void a transfer. Cal.

---

[11] *Potter* and *Tassone* involved different individuals with the surname "Tovar." There does not appear to be any relevant connection between those individuals or the two cases.

11

Civ. Code § 3439.01(b). Whether the Sangers were secured creditors is of no consequence.

### E. Claim Against Lance Ahn

The Ahns' motion challenges the Sangers' claim against Lance Ahn only on the grounds that: (1) Lance was not a transferee or beneficiary of the transfer; and (2) any claim against Lance Ahn based on a theory of conspiracy must fail for the same reasons that the Ahns argued they were entitled to summary judgment on the underlying claim against Ahe Ahn.

The Sangers' claim against Lance Ahn is based solely on a theory of conspiracy. *See* Opp'n at 8–9. The Court previously held that such a theory can be viable with respect to a claim under the UVTA, although the Sangers' original complaint lacked sufficient allegations regarding Lance Ahn's involvement to state such a claim. *See* Order Re Mot. for J. on the Pleadings (dkt. 38) at 10–12.[12] The Sangers subsequently filed their first amended complaint to cure that defect. The Ahns' present motion does not contend that the Sangers lack sufficient evidence of Lance's involvement in the transfer to hold him liable as a coconspirator. Although the Ahns briefly raise such arguments in their reply, the Court declines to consider arguments to which the Sangers had no opportunity to respond.

The only basis for judgment on the Sangers' claim against Lance Ahn as a coconspirator that the Court considers here is the argument raised in the Ahns' motion: that the Ahns are entitled to judgment on the underlying claim against Ahe Ahn under the UVTA. Because the Court declines to grant judgment on the underlying claim for the reasons discussed above, the Court also declines to grant judgment on the claim against Lance Ahn as a coconspirator.

## IV. CONCLUSION

For the reasons discussed above, the Ahns' motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: October 15, 2019

JOSEPH C. SPERO
Chief Magistrate Judge

---

[12] *Sanger v. Ahn*, No. 18-cv-07204-JCS, 2019 WL 1229660, at *6–7 (N.D. Cal. Mar. 15, 2019).

12